IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                        Plaintiff,

v.                                                 Case No. 23-20072-01-DDC

MARTIN PERUSQUIA (01),

                        Defendants.

## MEMORANDUM AND ORDER

Defendant Martin Perusquia is charged with possessing contraband while an inmate at United States Penitentiary in Leavenworth, Kansas. On March 28, 2023, guards allegedly discovered that Mr. Perusquia had on his person a nine-inch icepick-type object. A grand jury then charged Mr. Perusquia with possession of prison contraband, alleging he violated 18 U.S.C. § 1791(a)(2) by knowingly possessing a prohibited object intended for use as a weapon. Doc. 1.

According to Mr. Perusquia's filing, "he only possessed the item of alleged contraband for the purpose of seeking protective custody not for use as a weapon." Doc. 32 at 3. Mr. Perusquia contends that a prison gang had targeted him for retaliation and that the gang posed a credible threat to his safety. *Id.* at 2. In light of Mr. Perusquia's assertions, the government asks the court to exclude in limine any necessity defense by Mr. Perusquia at trial. Doc. 15 at 1. The court held a hearing on the government's Motion in Limine (Doc. 15) on May 23, 2024. The court now grants the necessity defense portion of the government's motion and explains its reasons, below.

I.      NECESSITY DEFENSE

The Tenth Circuit has recognized the affirmative defense of necessity. *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007). A necessity defense excuses an otherwise unlawful act when a defendant proves three elements: "'(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm.'" *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (quoting *United States v. Unser*, 165 F.3d 755, 764 (10th Cir. 1999)).

But "the right to present an affirmative defense is not absolute." *United States v. Dixon*, 901 F.3d 1170, 1177 (10th Cir. 2018) (citing *United States v. Portillo-Vega*, 478 F.3d 1194, 1200–01 (10th Cir. 2007)). Instead, a defendant must "factually justif[y]" a necessity defense because "necessity may be little more than an *ex-post* attempt by defense counsel to exculpate a client." *Al-Rekabi*, 454 F.3d at 1124. So, the defendant bears the burden to prove his necessity defense by a preponderance of the evidence. *Portillo-Vega*, 478 F.3d at 1196–97 (affirming district court's grant of government's motion in limine to exclude evidence of duress when defendant failed to carry his burden at the motion hearing).

When determining the sufficiency of the evidence proffered to support the elements of the necessity defense, the court must review it in the light most favorable to the defendant. *Dixon*, 901 F.3d at 1178. The court then properly exercises its gate-keeping responsibilities by choosing to either allow or preclude such an affirmative defense. *Al-Rekabi*, 454 F.3d at 1125. Also, our Circuit instructs that the "necessity exception should be strictly and parsimoniously applied." *Id.* at 1122.

Here, the court decides the government's Motion in Limine (Doc. 15) on the first element of the necessity defense—no legal alternative to violating the law.

## II.    NO LEGAL ALTERNATIVE

"'[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the [necessity or duress] defenses will fail.'" *United States v. Saldivar-Munoz*, 439 F. App'x 730, 735 (10th Cir. 2011) (quoting *United States v. Bailey*, 444 U.S. 394, 410 (1980)).  That is, a defendant must establish "that all of his legal alternatives for avoiding the imminent threat were foreclosed." *Id.*  The "purpose of requiring a defendant to show that he had no legal alternative to violating the law is to force an actor to evaluate the various options presented and choose the best one, for the presumption is that, in most cases, there will be a clear legal alternative." *United States v. Mercer*, No. 07-1173, 2008 WL 9375541, at *3 (D.N.M. Nov. 4, 2008) (quotation cleaned up).

Here, to establish the threshold element of no legal alternative, Mr. Perusquia proffered two pieces of evidence:  (1) his request to live in segregated housing, a request submitted on his Leavenworth intake form when he was re-designated to the BOP facility in December 2022; and (2) other "anticipated," forthcoming evidence to show that he took further measures to secure his safety.  Mr. Perusquia's proffer fails to meet his in limine burden.

*First,* the intake form.  Mr. Perusquia submitted his segregated housing request about three months before the fateful day when he allegedly possessed the icepick.  And, after that initial request, Mr. Perusquia's central file contains no subsequent requests for segregated housing until the day of the icepick incident.  The court is unpersuaded that a request written on an intake form—followed by three months of silence and no other requests—demonstrates that

3

Mr. Perusquia had foreclosed all his legal alternatives for avoiding any imminent threat. *Saldivar-Munoz*, 439 F. App'x at 735.

*Second*, defense counsel referenced "anticipated," forthcoming evidence. When describing this anticipated evidence to the court, Mr. Perusquia provided no details, no dates, no names, not even a hint about the nature and timing of his further measures. In short, Mr. Perusquia provided nothing on which the court could base a finding that he either had unsuccessfully attempted alternative methods to secure his safety or that no alternative methods existed. He offered no proof that he had evaluated the various options presented and chosen the best one. *Mercer*, 2008 WL 9375541, at *3. In sum, he failed to overcome the presumption that, in most cases, there is a clear legal alternative. *Id.* This proffer simply isn't sufficient.

Trying to cure the shortcomings of his proposed necessity defense, Mr. Perusquia directed the court to two Tenth Circuit cases. In both cases, the Circuit affirmed the trial court's order excluding the necessity defense. Mr. Perusquia purported to distinguish his situation from that of the defendants in those two cases. First, he directed the court to *United States v. Dixon*, 901 F.3d 1170 (10th Cir. 2018). In *Dixon*, the defendant, a cashier, embezzled from her employer over a three-month period. *Id.* at 1173. She wanted to present a duress defense to justify her embezzlement based on an imminent threat of sexual abuse from her stepfather and a PTSD diagnosis. *Id.* at 1175. The court granted the government's motion in limine excluding her duress defense—and the Tenth Circuit affirmed. *Id.* at 1175–76. The Circuit resolved the appeal on the "no reasonable, legal alternative" prong of the duress defense. *Id.* at 1179. Specifically, the Circuit held that the defendant had "failed to make out the threshold showing" because, for one, the defendant "could have reported the abuse to the police. Indeed, the ability to contact law enforcement will generally constitute a reasonable alternative to illegal activity."

*Id.* (quotation cleaned up).  The Circuit also noted other legal alternatives—"any number of things"— beyond contacting the police that the defendant could have done without breaking the law.  *Id.* at 1180.

Here, Mr. Perusquia argues that he didn't have such freedom of movement—and thus lacked *Dixon*'s "any number" of legal, reasonable alternatives—because he was in prison.  It's a fair point.  But that difference doesn't explain why Mr. Perusquia didn't avail himself of the clear legal alternative he did have:  contacting guards or prison authorities to request segregated housing.  Indeed, the second case Mr. Perusquia directed the court to consider, discussed below, specifically listed the alternatives available to an inmate who fears for his safety.  And the list was long.

In that second case, *United States v. Shields*, the defendant was a prison inmate concerned for his safety because of a verbal altercation with another inmate.  774 F. App'x 434, 435 (10th Cir. 2019).  After that verbal altercation, prison guards caught the defendant hiding two pieces of sharpened-to-a-point metal in his rectum.  *Id.* at 436.  The defendant sought a jury instruction on necessity and requested discovery to prepare a necessity defense.  *Id.*  Our Circuit determined that the defendant had failed to satisfy the required elements of a necessity defense, in part, because he "made no effort to contact or otherwise notify the prison guards of any threat."  *Id.* at 437.  And then the Circuit listed alternative, legal options a prison inmate could invoke to secure his personal safety—at least for a prison inmate at ADX, the United States Penitentiary – Administrative Maximum in Florence, Colorado.  Specifically, a threatened inmate

> can stop and speak to any staff member, write a cop-out note [to pass to a guard at meal time], hit the duress button [available in each cell], or directly express any safety concern to [a Special Investigative Services (SIS)] member. . . . [I]nmates routinely use the food-tray slots of their cells to pass notes to guards seeking

5

> medical care and other services. . . . [and] prison mail is opened and read by SIS, reflecting another means by which [the defendant] could have contacted prison staff without alerting other inmates.

*Id*. at 437–38.  To be sure, *Shields* identified the legal alternatives available to an inmate at ADX, not the Leavenworth facility housing Mr. Perusquia.  And the court doesn't presume the alternatives for inmates in two different prison settings are identical.  Nor does the court mean to suggest that the inmates' allegedly threatening situations align precisely.  But this lengthy list of options assures the court that Mr. Perusquia must have had *some* legal alternative to request protection from guards or prison authorities.  Mr. Perusquia has proffered no evidence that he ever pursued such an option after his initial intake form.  And more to the point, Mr. Perusquia has proffered no evidence to sustain his burden to show, pretrial, what binding Circuit authority requires, *i.e.*, that "'there [was] no legal alternative to violating the law[.]'"  *Al-Rekabi*, 454 F.3d at 1121 (quoting *Unser*, 165 F.3d at 764).

At bottom, the court agrees with the government.  Mr. Perusquia hasn't discharged his burden to provide a basis for concluding that he had no other legal alternatives than to weaponize himself.  In sum, Mr. Perusquia hasn't proffered sufficient evidence to demonstrate that he had no other legal alternatives.  Even viewing the proffered evidence in the light most favorable to Mr. Perusquia, it fails to suffice.  And "this failure alone justifie[s] a rejection of the defense." *Portillo-Vega*, 478 F.3d at 1202.

And so, the court grants the necessity defense portion of the government's Motion in Limine (Doc. 15).  The court excludes the necessity defense from trial—at least for now.  The court is mindful that defense counsel suggested at the motion in limine hearing that other "anticipated" evidence will supplement Mr. Perusquia's proffer on the no legal alternative prong.  If, indeed, Mr. Perusquia can marshal such evidence, he may approach the court—outside the

presence of the jury—and revive his attempt to meet his necessity defense burden. Until then, however, this Order precludes Mr. Perusquia from arguing or presenting evidence that necessity justified his alleged conduct.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion in Limine (Doc. 15) is granted in part and denied in part. The portion of the Motion addressing the necessity defense is granted, as outlined in the above Order. The portion of the Motion addressing other evidence of conditions at Leavenworth was granted in part and denied in part at the motion in limine hearing.

**IT IS SO ORDERED.**

**Dated this 24th day of May, 2024, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**